JOSÉ IGNACIO DÍAZ LAMOUTTE ET AL., Plaintiffs and Appellants, *v.* EUSTACIA LUCIANO MALDONADO ET AL., Defendants and Appellees.

No. 10463. Decided June 29, 1962.

*H. González Blanes* for appellants. *Luis Blanco Lugo* and *Jorge Souss* for appellee Eustacia Luciano Maldonado. *E. T. Fiddler, José G. González, Tomás I. Nido,* and *Ramón Nevárez* for appellee Josefa Rivera.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Santana Becerra, and Mr. Justice Dávila.

MR. CHIEF JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

Half a century ago Josefa Rivera—through a guardian ad litem, by reason of her being a minor—in her capacity as mother with patria potestas over her son Ramón Rivera, born November 26, 1908, brought an action of filiation in the former District Court of Guayama against Ramón Pastor Díaz Molinaris, seeking that her aforesaid son be declared the acknowledged natural child of the defendant, with whom she allegedly lived under the same roof cohabiting with him as if she were his wife, her son Ramón having been begotten of such relations and openly treated by the defendant as his son, the latter supporting him as well as his mother.

The judgment of filiation rendered in that action was reversed by this Court in *Rivera v. Díaz,* 19 P.R.R. 524 (1913), on the ground that the trial judge had committed fundamental error in striking out and not taking into consideration in the decision of the case evidence offered by the defendant to the effect that the plaintiff had sexual relations with other

men at the time her child could have been conceived.[1] The case was remanded and a new trial ordered.

More than a quarter of a century elapsed without the plaintiff procuring the new trial ordered by this Court, until on February 28, 1940 judgment was rendered in that case, under the circumstances which we shall hereinafter describe, declaring that Ramón Rivera was the acknowledged natural son of Ramón Pastor Díaz Molinaris.

---

[1] In *Ginés* v. *Escudero*, 58 P.R.R. 564 (1941), this Court expressly overruled the case of *Rivera* v. *Díaz* in so far as the latter case laid down the doctrine that evidence of the mother's sexual relations with other men, even though it had not been expressly alleged as new matter of opposition to the complaint, was admissible. We must clarify that in *Rivera* v. *Díaz* it was expressly alleged in the answer by the defendant therein, Ramón Pastor Díaz Molinaris, that Ramón Rivera, the child whom plaintiff Josefa Rivera claimed was his, was the natural child of one *Ramón Jiménez*, and the evidence to that effect was considered by the court which took cognizance of the action in sustaining the complaint. The evidence stricken out, which Díaz Molinaris offered *at the trial* and which led to the reversal in that case, hinged on carnal acts of the plaintiff with other men, without naming them expressly in his answer, to show that the child whose filiation was sought of him "was or at least perhaps is the child of the plaintiff by other persons, to wit: Juan Ortiz and Félix Garcerán." Referring to this evidence, we said in footnote 10 in *Rivera* v. *Heirs of Díaz*, 70 P.R.R. 168, 182: "... it is significant that on December 12, 1912, Ramón Pastor Díaz Molinari, Pedro G. Goyco, and Attorney Luis Abella Blanco, who acted by mutual agreement, were convicted by the District Court of Guayama of the crime of conspiracy and sentenced to serve one year in jail. The offense was that Ramón Pastor Díaz Molinari, in conspiracy with Goyco and his attorney, induced a certain Ramón Jiménez, upon payment of $25, and without the latter having had any relations with Josefa Rivera, to acknowledge by public deed Ramón Díaz Rivera, at that time a minor, as his son. Ramón Jiménez and Josefa Rivera appeared as parties to said deed and stated that Ramón Díaz Rivera was their child. This deed was prepared by said attorney, in agreement with Ramón Pastor Díaz Molinari. Taking advantage of the fact that Josefa Rivera did not know how to read or write, although she knew how to sign, they deceived her by telling her that by that deed Ramón Pastor Díaz Molinari was acknowledging her son, all of which was done with the object of making her sign the instrument, thereby depriving the child of his right to establish his status as acknowledged natural son of Ramón Pastor Díaz Molinari. By virtue of this deceit, the mother signed the deed. This combined action by Ramón Pastor Díaz Molinari, Goyco and the said attorney, gave rise to the sentence on a charge of conspiracy, which was affirmed by this Court. *People* v. *Díaz et al.*, 22 P.R.R. 177; *In re Abella*, 25 P.R.R. 694."

810

For a better understanding of the questions involved in this appeal—which hinges principally on the nature and on the juridical consequences under our Civil Code system of provisions concerning last will which are contained in a closed will by virtue of which the plaintiffs herein assert their rights—it is necessary to make a detailed exposition of the facts involved and the actions taken since the testator's death.

I

Ramón Pastor Díaz Molinaris died in Ponce on November 4, 1939. Two days prior to his death—November 2—he executed a closed will, which was protocolized by an order of the former District Court of the Judicial District of Ponce[2] on the 18th day of the same month and year in the protocol of Notary Frank Torres of that city, who made the protocolization on the 22d day of that month.

On November 21, 1939, Ignacio Díaz Luzunaris, in his capacity as only son of the testator, born of the former marriage of the latter and Carolina Luzunaris, brought an action in the same court seeking the nullity of the will in question. His complaint was directed against Eustacia Luciano Maldonado, as widow of the predecessor and legatee and adoptive mother of minor Margarita Luciano, another legatee; against Antonio Arguelles, José Antonio Mera Texidor, Irene Texidor Mera, Omega Vega, Vicente Palés Matos, Julia María Feliciano, all as legatees, and against Domingo Crescioni, Miguel Angel Crescioni Rodríguez, and Jorge Luciano Maldonado, in their dual capacity of legatees and executors.

---

[2] In the judicial proceeding taken on November 15, 1939 in connection with the probation of the will, there was presented and identified another similar will executed by the same testator on October 31 of that year, with regard to which the court provided:

"Proceedings terminated. As to the former, the same should be attached to the record, namely, the will dated the thirty-first day of October nineteen hundred and thirty-nine. Let it be filed of record as perpetual memory, and it is ordered that the said will be sealed in an envelope and kept in the safe of the office of the clerk."

In the first three causes of action of his complaint[3] he alleged, briefly, that the will executed on November 2, 1939 by his father, Ramón Pastor Díaz Molinaris, was null and void because it was the product of fraud, violence, and mental coercion exercised by codefendant Eustacia Luciano Maldonado and her brother Jorge on the testator—who as a result of his condition was unable to read or co-ordinate normally his ideas—by using certain fraudulent and deceitful procedures which he described in his complaint, having acted in that fashion with the deliberate purpose of favoring Eustacia Luciano Maldonado and injuring and prejudicing the rights of the plaintiff as forced heir and only son of the predecessor, challenging likewise the legacies and other provisions of that will on the ground of intrinsic vices in its execution and failure to summon the plaintiff for the probation of the will.

## II

On February 28, 1940, after more than 27 years of inaction in the original action brought by Josefa Rivera in the name of her son Ramón in the former District Court of Guayama, judgment was rendered in that action declaring Ramón Rivera the acknowledged natural child of Ramón Pastor Díaz Molinaris who, being already deceased, was substituted as a party defendant by his legitimate child Ignacio Díaz Luzunaris and his widow Eustacia Luciano Maldonado. The children of Ignacio Díaz Luzunaris were not joined as defendants in that action.

## III

On the same day of February 28, 1940, by deed executed on that date before a notary, the natural child entered into a contract of settlement of hereditary rights with his brother Ignacio, whereby he received the sum of $10,000 in full

---

[3] In a fourth cause of action he challenged the marriage of the testator and codefendant Eustacia Luciano Maldonado.

settlement of his share in the inheritance of his father Ramón Pastor Díaz Molinaris, which was estimated at some $600,000.

## IV

On March 13, 1940, Ignacio Díaz Luzunaris filed a supplemental complaint in the action on nullity of will filed by him in Ponce on November 21, 1939. By virtue of the judgment of filiation rendered on February 28 of that year in Guayama declaring Ramón Rivera the acknowledged natural child of Ramón Pastor Díaz Molinaris, he prayed that the said supplemental complaint be sustained "and, consequently, that the will of the said Ramón Pastor Molinaris (sic) was null and void inasmuch as the said natural child was entitled to the entire free third," and that judgment be rendered declaring that he, as his legitimate child, Ramón Díaz Rivera, as his acknowledged natural child, and his widow Eustacia Luciano Maldonado, in the usufructuary quota, were the heirs of the predecessor.

On that same date the widow of Ramón Pastor Díaz Molinaris and the testamentary executors Jorge Luciano Maldonado, Domingo and Miguel Angel Crescioni Rodríguez acquiesced in the prayer of the supplemental complaint, and judgment was rendered accordingly on the 18th day of the same month.

## V

On March 13, 1940, by deed of settlement executed by Eustacia Luciano Maldonado and Ignacio Díaz Luzunaris, the former ceded to the latter her share in the community property of her marriage to Ramón Pastor Díaz Luzunaris, her widow's usufruct, and "any other right, interest, share, profit, or action which might correspond to her in the inheritance" of her deceased husband "in her capacity as heiress as well as creditor or in some other capacity."

## VI

On January 26, 1945 Josefa Rivera—as tutrix of Ramón Díaz Rivera, who had been declared incompetent to administer his property by reason of insanity—brought an action against Ignacio Díaz Luzunaris and Eustacia Luciano Maldonado, seeking the annulment of the deed executed by her son Ignacio on February 28, 1940 and the deed executed by the widow and Ignacio on March 13 of the same year.

In *Rivera* v. *Heirs of Díaz*, 70 P.R.R. 168 (1949), this Court affirmed, although on grounds other than those stated by the trial court, the judgment sustaining the complaint annulling the contract of settlement of hereditary rights entered into by Ignacio Díaz Luzunaris and his brother Ramón.[4] Ignacio having died while the action was pending, he was substituted by his heirs as a party defendant therein.

## VII

The present action was brought by José Ignacio, Carlos Manuel, Evangelina, and Carolina Díaz Lamoutte, represented by their guardian ad litem, as allegedly direct heirs and claimants of their grandfather Ramón Pastor Díaz Molinaris, by virtue of certain testamentary provisions[5] which we shall examine hereinafter, according to which they maintain that a substitution in trust was created in their favor with a condition precedent as respects the one third of the advantage or extra portion of the estate left upon the testator's death, and as respects one half of the free third bequeathed in naked ownership to the predecessor's widow, the plaintiffs therefore acquiring, since that moment, hereditary rights as members of the former's succession, pursuant to

---

[4] The trial court dismissed the complaint as respects the contract entered into by Ignacio and the widow and no appeal was taken from the judgment.

[5] The Eighth and Ninth clauses of the will only mention three of the testator's grandchildren: José Ignacio, Carlos Manuel, and Evangelina. Carolina is not included.

§§ 713 and 728 of our Civil Code. The action was directed against the testator's widow, Eustacia Luciano Maldonado; against Josefa Rivera as mother and only heir of Ramón Rivera or Ramón Díaz Rivera; against the testamentary executors; and against several legatees and other persons who acquired by purchase properties belonging to the hereditary estate after the testator's death.

In the alleged capacity of heirs under the said will, the plaintiffs challenge in this action (1) the validity of the judgment of filiation rendered by the former District Court of Guayama on February 28, 1940, declaring that Ramón Rivera was the acknowledged natural son of the testator, alleging that they were not joined as defendants and that they are a necessary party as members of the predecessor's succession—originally sued in the said action of filiation and substituted therein, upon his death, only by his legitimate son Ignacio Díaz Luzunaris and his widow Eustacia Luciano Maldonado; (2) the validity of the judgment rendered on March 18, 1940 by the former District Court of Ponce, declaring null and void the will executed by Ramón Pastor Díaz Molinaris on November 2, 1939, in the action brought by Ignacio Díaz Luzunaris against the testator's widow and the testamentary executors, without joining as defendants the plaintiffs herein, notwithstanding they are a necessary party in that action; (3) the validity of the declaration of heirs made in that judgment in favor of the predecessor's legitimate son, Ignacio Díaz Luzunaris, of the natural child acknowledged by virtue of the judgment of filiation first mentioned, Ramón Díaz Rivera, and of the widowed spouse Eustacia Luciano Maldonado, the latter as respects the widow's share of the usufruct; (4) the validity of the deed executed on March 13, 1940, whereby Ignacio Díaz Luzunaris acquired the rights of Eustacia Luciano Maldonado in the estate of Ramón Pastor Díaz Molinaris. In harmony with the foregoing, they pray for recognition of their hereditary

rights, as they appear from the will in question, and for the revendication of the hereditary properties which may correspond to them, providing for their restitution to the hereditary estate, together with all the properties of the inheritance, for the adjudications provided in the said will, and for the annulment of all agreements, settlements, and decrees concerning the restitution and delivery of the properties which may correspond to them, and damages.

In her answer, special defenses, counterclaim, and cross-complaint, defendant Josefa Rivera maintains, briefly, that the condition of her son Ramón Rivera, as natural son of Ramón Pastor Díaz Molinaris, was adjudicated by judgment of filiation rendered by the District Court of Guayama on February 28, 1940; that the said Ramón Pastor Díaz Molinaris died intestate because he did not execute any valid will, and that the order of protocolization of the will of November 2, 1939, entered by the District Court of Ponce in the special proceeding instituted for that purpose, is null and void; that by virtue of the said document—which was no such will—the plaintiffs were not instituted heirs nor conferred any legacy, not even subject to a condition precedent, nor was any substitution in trust created, wherefore the plaintiffs are not necessary parties nor have any interest in the action of filiation in which her son obtained judgment as acknowledged natural son of Ramón Pastor Díaz Molinaris or in the action of nullity of will.

She further maintains that the will is void, independently of the nullity decreed by the District Court of Ponce—according to which it is res judicata as respects the plaintiffs—because of several defects or causes of nullity of the said will.

The issue in the trial court was joined by virtue of a motion for summary judgment, accompanied by several documents and affidavits filed by defendant Josefa Rivera, and by a motion for dismissal, also accompanied by several doc-

uments, filed by codefendant Eustacia Luciano Maldonado, and of opposition by the plaintiffs accompanied by an opposing affidavit of the guardian ad litem.

The trial court rendered judgment dismissing the complaint on the ground that the will executed on November 2, 1939 by Ramón Pastor Díaz Molinaris was void, and because, assuming the nullity of the judgment of the District Court of Ponce which set aside the same, the plaintiffs, the children of Ignacio Díaz Luzunaris, were not considered as heirs under the terms of the Eighth and Ninth testamentary clauses, and on other grounds which we need not mention at this time.

The issues posed by the plaintiffs in their appeal before this Court require us to examine first the testamentary clauses on which they rest their action, for if the testator had instituted a substitution in trust in favor of his grandchildren, it would be necessary in such case to examine its nature and the juridical consequences in the different judicial actions challenged herein and then turn to consider the rights of the parties in this action and, lastly, the correctness of the judgment rendered.

### The Pertinent Testamentary Clauses

After directing in the Sixth clause of the testamentary clauses that upon his death "one third of all his properties, after payment of all debts and outstanding liens, shall pass to his legitimate son Ignacio Díaz Luzunaris, in naked ownership *(sic)*," and providing in the Seventh clause for a legacy of a thing certain of the free third in favor of his wife, in the Eighth and Ninth clauses the testator provided:

#### "EIGHTH

"It is likewise the last will of the undersigned testator that his widow shall have the usufruct, use, income, and enjoyment of one third of all his properties destined by law to advantages or extra portions, his son Ignacio Díaz Luzunaris conserving the naked ownership until on the death of the widow title is consolidated in him. If his son Ignacio Díaz Luzunaris shall

predecease his widow and the latter has not contracted subsequent marriage, she will continue to enjoy the rents and usufruct of these properties until on her death the ownership thereof is consolidated in the three legitimate children of his son Ignacio Díaz Luzunaris. The testator also directs that, upon his death, his executors shall transfer and pass title to one half of the community property to his legitimate wife Eustacia Luciano Maldonado de Díaz, and further, that one half of the free third of all his worldly possessions shall pass also to his legitimate widow Eustacia Luciano Maldonado de Díaz, in naked ownership, for her to have, hold and enjoy and receive the rents, to her best knowledge and belief, during widowhood, subject to the terms of the following clause:

## NINTH

"The testator directs that if his widow, Eustacia Luciano Maldonado de Díaz, should contract subsequent marriage, she will be bound to set apart or to return to the three legitimate grandchildren of the testator—the legitimate children of Ignacio Díaz Luzunaris; and to Jorge Luciano Maldonado, his brother-in-law; to Antonio Argüelles, son of his sister Hortensia Díaz, resident in Spain; to Irene Texidor de Mera, resident in San Juan, Puerto Rico; and to Jorge Antonio Mera, share and share alike, in addition to the legacies instituted in their favor, the naked ownership of all the properties which she may have acquired hereunder, excepting her half of the community property, as provided in the preceding clause."

By the Seventeenth clause he instituted as legatee, under certain conditions, Margarita Luciano Maldonado, in the residue of the free third after payment of several legacies of money amounting to $14,500 made by him in other clauses in favor of different persons, setting forth that in the event of failure of the said legatee to comply with certain conditions imposed on her "the naked ownership of the said legacy shall revert to the legitimate grandchildren of the testator, children of Ignacio Díaz Luzunaris."

### Scope of Testamentary Clauses

The Eighth and Ninth clauses which we have copied—as well as others of the will under consideration—can not be

taken as a model of the best juridical construction, but this notwithstanding we can not forego to search in them for the true will of the testator.

■■ By virtue of the Eighth clause,[6] pursuant to the widow's legitimate right as forced heir—§ 736 of our Civil Code—the testator directed that she shall have the usufruct (he added *use, income,* and *enjoyment*) of one third of all his properties "destined by law to advantages or extra portions, his son Ignacio Díaz Luzunaris conserving the naked ownership until on the death of the widow the title is consolidated in him." However, notwithstanding the identity of expression between the above-copied portion of the Eighth clause and the text of § 761 of our Code, the testator was not merely reciting the legitimate right of the widow, as respects her usufructuary share, and the legitimate right of his son Ignacio, as respects the naked ownership,[7] recognized to them

---

[6] The plaintiffs contend that by virtue of the provisions of the Eighth clause the testator created a substitution in trust in their favor, subject to a condition precedent: the death of Ignacio before that of his widow; and that this being so, they have the status of forced heirs of the testator, since according to § 728 of the Civil Code such condition precedent "does not prevent the heir or legatee from acquiring their respective rights and transmitting them to their heirs, even before their fulfilment."

They make a like contention regarding the Ninth clause—in connection with the last paragraph of the Eighth clause—on the one half of the free third, which the testator directed that it pass to his widow "in naked ownership, for her to have, hold, and enjoy and receive the rents, to her best knowledge and belief, during widowhood," but subject to the condition that if she contracted subsequent marriage—which she actually did—she would be bound "to set apart or to return to the three legitimate grandchildren of the testator—the legitimate children of Ignacio Díaz Luzunaris," and to other persons also designated as legatees, "the naked ownership of all (*sic*) the properties which she may have acquired hereunder."

The testator could, of course, impose the condition that she remain a widow as respects one half of the free third, since the legal portion was not involved in this case and it was permitted by § 722.

[7] We make reference in this opinion, as is natural, to the state of law of succession existing at the time of the testator's death.

Under the state of the legislation applicable to the case, the legal portion of the legitimate children and descendants consisted of two thirds of the hereditary estate—§ 737 of the Civil Code. By disposition of the

by that section. He forthwith directed that "If his son Ignacio Díaz Luzunaris shall predecease his widow and the latter has not contracted subsequent marriage, she will continue to enjoy the rents and usufruct of these properties *until on her death the ownership thereof is consolidated in the three legitimate children of his son Ignacio Díaz Luzunaris.*" (Italics ours.)

 Naturally, the condition imposed by the testator in order that the widow could continue enjoying the usufruct, that on the death of his son Ignacio "she has not contracted subsequent marriage," should be considered nonexistent because it is contrary to law—§ 721—because since the widow is a forced heir—§ 736—and since her legal portion consists of the usufruct of one third of the properties to be applied to advantages or extra portions—§§ 761 and 762—the enjoyment thereof could not be conditioned, according to the provisions of § 741. 6 MANRESA, *Código Civil* 418 (7th ed.) ; 14 SCAEVOLA, *Código Civil* 400 (4th ed.).

Which is the scope, then, of the testamentary clauses copied above?

██ It is well to point out forthwith that according to § 751[8] of our Civil Code, the testator could have disposed of the third of the advantage or extra portion in favor of his grandchildren, the children of Ignacio, by instituting them his direct heirs for the enjoyment of the properties at his death, even during Ignacio's lifetime. 96 *Jurisprudencia Civil* 924; ROYO, *Derecho Sucesorio* 200–01; 6 MANRESA, *Có-*

section *supra*, the father or the mother could nonetheless dispose of one of the two thirds destined to the legal portion in order to apply it as an advantage portion "in favor of one or more of their legitimate children or descendants."

[8] Section 751. "The father or the mother may dispose of one of the two thirds destined as the legal portion in favor of one or more of their children or descendants.

"This portion is called an advantage or extra portion.

"No other encumbrances can be imposed upon the advantage or extra portion than those which may be established in favor of the forced heirs or their descendants."

*digo Civil* 486–87 (7th ed.) ; 14 SCAEVOLA, *Código Civil* 512–13 (4th ed.) ; 4 CASTÁN, *Derecho Civil* 532–35 (6th ed.) ; 2 PEDREIRA, *Código Civil* 226; GONZÁLEZ REBOLLAR, *Sobre mejoras a los nietos en vida de su padre,* 104 *Rev. Gral. de Leg. y Jurisp.* 409; the same author in 105 *Rev. Gral. de Leg. y Jurisp.* 5; FERRARA, *Concepto del Testamento—La Legítima y la Mejora,* in *Rev. de Derecho Privado* 139 (1928) ; 3 CLEMENTE DE DIEGO, *Instituciones de Derecho Civil Español* 254. Similarly, he could impose on the portion of the advantage or extra portion corresponding to Ignacio's legal portion a substitution in trust, pure or conditional, in favor of his grandchildren, under the authority of the precept cited and of § 711.[9]

■■ According to § 710 of our Civil Code, the substitution in trust may be defined as a testamentary provision "by virtue of which the heir is entrusted with preserving and transmitting to a third person the whole or part of the inheritance." 3 CLEMENTE DE DIEGO, *op. cit.* at 163. The characteristics or essential requisites of this substitution, according to the different precepts of the Code and by their nature, have been established by the case law and the doctrine as follows:

1. Double designation made by the testator of the same property in favor of two persons called upon to claim them in succession, one after the death of the other.

2. Obligation to set apart and transmit the properties.

3. Successive order established by the testator in his designations, according to which it should be understood that the *cestui que trust* takes the inheritance upon the death of the first person designated. 218 *Jurisprudencia Civil* 7 *(Pub. Rev. Gral. de Leg. y Jurisp.);* 3 CLEMENTE DE DIEGO, *op. cit.* at 166–67; ROYO, *op. cit.* at 158–59; 4 CASTÁN, *op. cit.*

---

[9] Section 711. "Substitutions in trust can never impair the legal portion. Should they fall upon the third destined to the advantage or extra portion, they can be made in favor of the descendants only."

at 463; 5 Espín Cánovas, *Derecho Civil Español* 217; 2 Roca Sastre, *Estudios de Derecho Privado* 36–37; Travie-sas, *Sustituciones Hereditarias*, in *Rev. de Derecho Privado* 414 *et seq.* (1927); 1 Coello, *Sucesiones* 608 *et seq.*; 1 Santamaría, *Comentarios al Código Civil* 765 *et. seq.*; 2 Planas y Casals, *Derecho Civil Español* 45; 3 Gerónimo González, *Estudios de Derecho Hipotecario y Derecho Civil* 377; 5–1 Puig Peña, *Tratado de Derecho Civil Español* 492 *et seq.*; 2 Pedreira, *op. cit.* at 171 *et seq.*; 5 Valverde, *Tratado de Derecho Civil Español* 193 *et seq.*; 6 Manresa, *op. cit.* at 205 *et seq.*

▇ In the part relative to the disposition of the third of advantage or extra portion, the Eighth clause complies with the essential requirements necessary to constitute the juridical figure "substitution in trust," subject to the condition precedent of Ignacio's death prior to the widow's.

The said clause contains (1) a *double designation*: one in favor of Ignacio, as forced heir to whom by law corresponded two thirds of the legal portion; and a second appointment (express) in favor of the children of Ignacio in the event the latter predeceased the testator's wife; (2) a *successive order*, namely, that those appointed in the second place would come into the inheritance after and as a result of the death of the first person designated if the condition was met; and (3) Ignacio's express obligation *to conserve* —with the corresponding consequence of *prohibition* to alienate—the naked ownership of the properties comprised in the third of advantage or extra portion. If he predeceased his wife, upon the latter's death the title in fee simple in the said properties would be merged in those designated in the second place, the grandchildren of the testator.

▇ Naturally, we are not dealing with a pure substitution in trust but with a contingent trust, the character of which is determined by the uncertainty of the occurrence of a casual event which necessarily did not have to happen:

the death of Ignacio *before* that of the widow. In the contingent substitution in trust the restitution of the properties may take place only upon the happening of some future contingent event. 5–1 PUIG PEÑA, *op. cit.* at 491; LA CRUZ BERDEJO, *Estudios de Derecho Civil* 619–20.

 Although the substitutions in trust shall produce no effect if they are not made in an express manner, either by giving them this name or by imposing upon the substitute the absolute obligation of delivering the property to a second heir—§ 714—it is sufficient, in order to determine their existence, that their disposition be inferred from the manner, mode, and terms of the testator's will, 5–1 PUIG PEÑA, *op. cit.* at 493; 46 *Jurisprudencia Civil* 645, 667 (*Rev. Gral. Leg. y Jurisp.*, 1954), in order that they be regarded as substitutions. The substitutions in trust in the instant case being conditioned on the death of Ignacio prior to that of the widow, the restitution of the properties to the grandchildren depended precisely on an event which may or may not happen in the manner provided, but that if it did happen, it determined by itself the restitution to the grandchildren of the one third of advantage or extra portion, in naked ownership, which the testator had required Ignacio to conserve—and that the latter shall have unconditionally acquired for himself, in fee simple, in the event the widow predeceased him.

 Likewise the essential characteristics of the contingent substitution in trust are present in the clauses relative to one half of the free third which by the said Eighth clause, conditioned by the Ninth clause, the testator left[10] to his widow.[11]

---

[10] According to § 609 of our Civil Code, the widow, under the foregoing clauses—contrary to the criterion expressed by the trial court—would be an heir and not a legatee, since she would receive in the free third an aliquot part of the inheritance. 5 MANRESA 333–34.

[11] As we know, the testator directed by the Eighth clause that one half of the free third of his estate should pass to his wife, "in naked ownership, for her to have, hold, and enjoy and receive the rents,"

## Rights of the Contingent Cestui Que Trust

The substitutions in trust herein were constituted under conditions precedent. The grandchildren would be entitled to the third of advantage or extra portion if the legitimate child predeceased the testator's widow, and to one half of the free third if the widow contracted subsequent marriage. Both events were contingent and uncertain—§ 1066 of the Civil Code. They were not events which necessarily had to occur. Ignacio could or could not predecease the widow. If the widow predeceased Ignacio, the condition imposed would be ineffective and the predecessor's grandchildren acquired nothing. The widow might or might not contract subsequent marriage. If she did not, the condition giving rise to the former's right would also be ineffective.

 Under the foregoing conditions, the rights of the grandchildren *in the inheritance* of their grandfather could not accrue at the moment and by the mere fact of the testator's death. The Spanish doctrine and decisions maintain that § 784 of the Spanish Civil Code, counterpart of our § 713, in providing that the *cestui que trust* shall acquire the right to the succession from the time of the death of the testator,

---

but subject to the condition, imposed by the Ninth clause, that if she contracted subsequent marriage the property would revert to his three grandchildren and to other persons designated. Construing this last clause, the trial court stated as follows: "Neither are the plaintiffs heirs of their grandfather, Pastor Díaz Luzunaris, under the provisions of the Ninth clause of the will. The wording of this testamentary provision clearly indicates that the testator's intention was to give effect to the provisions of § 923 of the Civil Code which impose on the widowed spouse the obligation to set apart for the descendants of the predeceased spouse the properties which he or she may have acquired for any good consideration or gift in the latter's estate. Evidently a reservee is not an heir.

"Eustacia Luciano Maldonado being a legatee under the terms of the Ninth clause, inasmuch as she is instituted in the free third, the character of the plaintiffs and other substitute beneficiaries may not partake of any character other than that of the person originally instituted."

This conclusion of the trial court was erroneous. The obligation to set apart property which according to § 923 of our Civil Code may come to legal life only if there are common children or descendants of the first marriage of the widower or widow who afterwards contracts subsequent marriage, does not come into play in this case.

even though he dies before the fiduciary, and that the right of the former shall pass to his heirs, "is applicable only to *pure* substitutions in trust, but not to contingent substitutions in which the person designated conditionally can not acquire nor transmit any right as long as the condition is not fulfilled, even though he has survived the testator, as it appears from § 759 (our § 688) in connection with § 791 (our § 720), both of which are applicable to all kinds of designations of heirs and contingent legacies." Judgments of the Supreme Court of Spain of July 9, 1910; April 9, 1928; March 13, 1942; and October 20, 1954. 5 BORRELL Y SOLER, *Derecho Civil Español* 145; 4 CASTÁN, *op. cit.* at 471; 3 GERÓNIMO GONZÁLEZ, *op. cit.* at 384; 3 ESPÍN CÁNOVAS, *op. cit.* at 220; 5-1 PUIG PEÑA, *op. cit.* at 492; 2 PEDREIRA, *op. cit.* at 171; CLEMENTE DE DIEGO, *op. cit.* at 175.

Neither does § 728 (Spanish § 799), which provides that "Conditions precedent do not prevent the heir or legatee from acquiring their respective rights and transmitting them to their heirs, even before the fulfilment," come into play in the instant case. The antimony between this section and § 688 (Spanish § 759) which provides that "The heir or legatee who should die before the condition is fulfilled, even though he survives the testator, transmits no rights whatsoever to his heirs"—which has been the subject of great concern on the part of the civil-law commentators—[12] has been decided by the Spanish authorities, in agreement with a vast majority of the doctrinal interpretation,

---

[12] 6-1 SÁNCHEZ ROMÁN, *Derecho Civil* 613 *et seq.* (2d ed.) ; 4 CASTÁN, *op. cit.* at 402; 13 SCAEVOLA, *op. cit.* at 867 *et seq.; DÍAZ CRUZ, Los Legados* 384; 2 CASSO Y VIÑAS, *Derecho Civil Español* 482 *et seq.;* TRAVIESAS, *Sobre Derecho Hereditario,* in *Revista de Derecho Privado* 14 (2d ed. 1921) ; 3 CLEMENTE DE DIEGO, *op. cit.* at 124, 129 *et seq.;* ROYO MARTÍNEZ, *op. cit.* at 141 *et seq.;* ISABAL, *La Doctrina de las Condiciones en Derecho y los Artículos 759 y 799 del Código Civil,* in *Revista de Derecho Privado* (1926). For an elaborate study of the different criteria stated by the doctrine on the question of prevalescence of either section, see, also, JOAQUÍN SOPENA, *"La Transmisibilidad de los derechos condicionales y la voluntad del testador"* in 197 *Rev. Gral. de Legis. y Jurisp.* 7–51.

in the sense that § 799—our § 728—"does not employ the word condition in a strict sense, but makes reference to a term or period, the expiration of which is determined by the death of a person which must necessarily occur, even though it is not known when, and the effect of which, pending the expiration, is to suspend the *effectiveness* of the designation, but without preventing *the creation of rights* in favor of the designee, which are transmissible to his heirs; after the death of the testator; however, when the right is not dependent on a specific term or period by the fact of the death of a person, *but rather on the survival of the former*, § 759 (our § 688) is applicable to the situation thus conditioned, the preferential application of which over that of § 799 because of its conformance with § 1114 (our § 1067) is recognized by the judgment of March 17, 1934." This prevalence governs equally in the case of contingent substitutions in trust. Judgments of March 17, 1934; March 4, 1952; October 20, 1954; December 6, 1957; January 26, 1957; and February 28, 1959. See, also, Judgments of February 1, 1910; July 9, 1910; February 1, 1912; January 29, 1916; December 29, 1917; July 9, 1917; and April 9, 1928.

Under the Eighth clause of the will in question the birth of the right of the plaintiffs, grandchildren of the testator, was not dependent on the term or period in which their father's death should occur, but on the condition, that the latter should predecease the testator's widow; and under the Ninth clause, not on the time the widow should contract subsequent marriage, but rather on whether or not she would actually contract any. Such situations belong to the sphere of § 688, according to which the grandchildren did not acquire any right by the fact alone of the death of the testator. Their right was conditioned on casual, uncertain events, and it could not accrue until the conditions, which had no fixed terms, were fulfilled.

### The Judgment of Filiation

 The old action brought in 1911, revived after 27 years of inaction, resulted in a judgment of filiation for the natural child. The testator's widow and the legitimate son Ignacio substituted the predecessor as defendants. Since neither the condition imposed by the testator regarding the prior death of Ignacio nor the widow's subsequent marriage were fulfilled, the grandchildren had not yet acquired any right to their grandfather's inheritance and, therefore, it was not necessary to join them as a party defendant. Consequently, the judgment of filiation of Guayama subsists validly with all juridical consequences of its validity.

### The Judgment Which Annulled the Will

The action for nullity of will was brought originally by Ignacio, as stated hereinabove, based on essential defects in the execution of his father's will. It was not until the judgment of filiation was rendered for the natural child that, through a supplemental complaint founded on the latter's omission, that he sought the nullity of the will and that the predecessor's intestate succession be declared open.

 We need not decide here whether the testator's grandchildren, by reason of the contingent substitutions in trust of the Eighth and Ninth clauses, had the right to be summoned in the plenary suit of nullity of will originally brought by Ignacio, to defend the uncertain expectation of their contingent rights. That cause of action was never litigated. The judgment rendered was based on the supplemental complaint, predicated on a different cause of action —omission of the natural child—the juridical consequences of which are also different. The effect of the omission of a forced heir in the straight line, whether legitimate or natural,[13] is the annulment of the designation of heir which

---

[13] Judgments of the Supreme Court of Spain of June 17, 1908; February 27, 1909; March 11 and May 22, 1950.

should not be confused with the annulment of the will, ROYO MARTÍNEZ, *Derecho Sucesorio Mortis Causa* 245, with the exceptions established in § 742.[14]

 Regarding the supplemental complaint, it was not necessary to summon the grandchildren, for two reasons: (1) because the filiation of the natural child having been decreed, his omission in the will had the effect of annulling the institution of heir made in favor of the widow as respects one half of the free third—which we shall presently see, corresponded in its entirety, by way of legal portion, to the natural child—as well as all legacies chargeable thereto, as being inofficious, and, hence, there disappeared *ipso jure* any possibility or expectation of right of the plaintiffs to be called as contingent substitute *cestui que trust* in the said half of the free third and, partly, of the said legacies; (2) because although the omission of the natural child had the effect at law of annulling the declaration of heirship, as already pointed out, it left subsisting, as not being inofficious, the contingent substitution in trust constituted in favor of the grandchildren as respects the third of the advantage or extra portion, according to the terms of § 742. Consequently, even though the judgment rendered on the basis of the supplemental complaint decreed the nullity of the entire will and opened the intestate succession, it may not have any juridical consequences other than those determined by law, namely, the nullity of the declaration of heirship, and, of course, of the legacies, in which case the contingent substitution in trust constituted on the third of the advantage or extra portion

---

[14] Section 742. "The omission of any or of all the lawful heirs in the right line whether they be living at the time of the execution of the will or whether they are born after the death of the testator shall annul the institution of an heir, but trusts and advantages or extra portions shall be valid whenever they are not inofficious."

should be considered valid and in full force. Ignacio having predeceased the testator's wife and the condition required for the grandchildren to come into the inheritance under the Eighth clause of the will having been thus fulfilled, the scope of their right, if it were necessary to pass upon the same, would perhaps constitute a suit between the substitute *cestui que trust* and the heirs of the trustee, the latter consisting in part of the substitutes themselves, but it may not affect at all the right of the natural child and his heirs to the portion of the inheritance corresponding to him.

### *Hereditary Portion of the Natural Child*

■ Let us determine the hereditary portion corresponding to the acknowledged natural child and, hence, to defendant Josefa Rivera as his universal heir. Under the state of law applicable herein—§ 767 of the Civil Code, before being amended by Acts Nos. 13 of March 29, 1945 (Sess. Laws, p. 38) and 255 of May 10, 1949 (Sess. Laws, p. 780)— when the testator left legitimate children or descendants and legally acknowledged natural children, each of the latter had a right to a portion equal to one half of that pertaining to each of the legitimate children who had not received any advantage or extra portion, provided it could be included in the third which may be freely disposed of, from which it must be taken, after deducting the burial and funeral expenses.

■ Since Ignacio was the only legitimate child of the predecessor, he was entitled to a legal portion equal to two thirds of the hereditary estate of his father. Section 737. Since the portion of the natural child is measured by the portion corresponding to the legitimate child who does not

receive any advantage or extra portion, and since Ignacio's portion is equal to two thirds, the portion of the former would be the remaining one third. Now then, is Ignacio's condition that of legitimate child who has not received an advantage or extra portion by reason of the fact that there are no other legitimate children of the testator? Or should he be considered, only as respects one third of his extra portion, as not having received an advantage or extra portion by reason of the fact that the testator instituted the aforesaid contingent substitution in trust in favor of his three grandchildren, in the third of the advantage or extra portion?

‚ ■■■■ The portion of two thirds to which Ignacio was. entitled as sole legitimate heir does not lose its character of legal portion by the fact that the testator burdened the third of the advantage or extra portion by a contingent substitution in trust in favor of his grandchildren.

When only one legitimate child concurs with a natural child, the legal portions of both are predetermined by the Code, and except for the encumbrances which it authorizes on the third of the advantage or extra portion, the right of the forced heirs to their respective portions can not be diminished at all. We already said that the testator could have applied the third of the advantage or extra portion to designate his grandchildren as his direct heirs in such third, even during Ignacio's lifetime, or encumber the same by a substitution in trust, with or without condition. The latter was done in the instant case, with the condition which we know, but Ignacio's right to two thirds of the legal portion subsisted at the time of his father's death, subject to the encumbrance which we have already examined, without the

testator's grandchildren coming at the time into the inheritance as heirs, and without his condition of legitimate child receiving no advantage or extra portion concurrently with the natural child being thereby affected. Consequently, the portion of the acknowledged natural child, measured also on the date of his father's death, consists of the free third, namely, one half of the legal portion of the only legitimate child who concurred with him in the inheritance. 221 *Jurisp. Civil* 684.

### Consequence of the Subsistence of the Lien on the Extra Portion

In view of what has been stated, the right of the natural child—and of his heiress, defendant Josefa Rivera—to the free third of the hereditary estate "after the burial and funeral expenses had been deducted," is out of controversy. The exception made in favor of the plaintiffs herein of the encumbrance constituted by way of contingent substitution in trust on the third of the extra portion of Ignacio's legal portion, has no juridical consequence on that right, notwithstanding Ignacio's death. Therefore, as respects her, the judgment rendered by the trial court will be affirmed without it being necessary to consider the grounds of nullity advanced by her in her counterclaim as absolute cause of nullity of the will whereby the plaintiffs brought the present action.

 Neither does such exception have any juridical consequences as respects defendant Eustacia Luciano Maldonado, the testator's widow, first, because the declaration of heirship made in her favor as respects one half of the free third having disappeared, the substitution in trust constituted in favor of the plaintiffs as respects such free portion likewise disappeared, without this conclusion being altered

by the fact that she actually contract subsequent marriage; and, second, because according to her right to the legal portion, she was entitled to the widow's usufruct equal to one third of the inheritance and she could not be deprived of it by reason of a subsequent marriage, wherefore the contingent substitution in trust constituted in favor of the plaintiffs as respects one third of the naked ownership of the extra portion was not affected at all, since such juridical figure merely constituted a permissible encumbrance, notwithstanding the omission of the natural child, on Ignacio's legal portion in such portion. Consequently, the complaint against the widow was correctly dismissed and, as respects her, the judgment will also be affirmed.[15]

In both particulars, however, the judgment is affirmed for reasons other than those stated by the trial court, since in none of those assumptions it was necessary to decree the nullity of the entire will, it being sufficient for those purposes, according to the applicable juridical doctrine, to declare the annulment of the declaration of heirship and the invalidity of the legacies, excepting, by operation of the law, the encumbrance constituted by way of contingent substitution in trust in favor of the plaintiffs over the third of the extra portion.

---

[15] By virtue of the contract of settlement executed on March 13, 1940, Ignacio acquired from the widow her half of the community property, plus any interest, share, and profit in the usufructuary portion as widowed spouse, as well as any other right, interest, share, profit, or action which might correspond to her in the predecessor's inheritance as heir, creditor, or in any other capacity, the latter receiving certain properties in consideration of such assignment.